### 69961. MARTIN v. BANK SOUTH.
(333 SE2d 616)

POPE, Judge.
Appellant Ursula Martin went to appellee Bank South on November 16, 1983 to do some banking. At the time she arrived, the lobby of the bank was closed; however, one could transact business at either the "walk-in window" or the "drive-in window." As Martin approached the rear door of the bank lobby, a bank employee saw her and told her that the lobby was closed and that she would need to go around to the front to the "walk-in window." As Martin proceeded around to the front, she passed through an opening in a guardrail next to the "drive-in window" lane. There was a curb adjacent to the lane. When Martin stepped from the curb onto the lane, she fell and

broke her hip. The trial court granted summary judgment to Bank South and Martin now appeals. *Held*:

Martin argues that issues of fact remain for jury determination in this slip-and-fall case. The contention is that the bank negligently created a hazardous situation by a combination of closing the bank lobby during certain hours, thus requiring customers to make their way to the front without providing a safe path to do so, and negligently leaving gaps in the guardrail through which customers could pass.

In order for Martin to recover, two elements must exist: (1) fault on the part of Bank South and (2) ignorance of the danger by Martin. *Moss v. Atlanta Housing Auth.*, 160 Ga. App. 555 (287 SE2d 619) (1981). " 'The basis of the proprietor's liability is his superior knowledge and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition.' [Cit.] Thus we can characterize the rule in relation to a 'static condition' as being that the basis of liability of an owner to an invitee who is injured is the superior knowledge of the owner of the existence of a condition that could subject the invitee to an unreasonable risk of injury. [Cit.]" *Inglett v. Winn-Dixie &c.*, 168 Ga. App. 192, 194 (308 SE2d 587) (1983).

The only evidence presented by Martin regarding her fall is that she approached the gap in the guardrail knowing of the existence of the curb. She testified that she was watching the traffic in the drive-in lanes and then simply fell. She has no recollection of why she fell. The evidence presented by the bank shows that the curb from which Martin fell is of ordinary configuration and construction. As was stated by the Supreme Court in *Alterman Foods v. Ligon*, 246 Ga. 620, 624 (272 SE2d 327) (1980): "To presume that because a customer falls . . . that the proprietor has somehow been negligent would make the proprietor an insurer of his customer's safety which he is not in this state. [Cits.] 'What the law requires is not warranty of the safety of everybody from everything, but such diligence toward making the [premises] safe as a good business man is in such matters accustomed to use.' [Cits.]" We find no evidence that the construction or design of the curb or guardrail is defective. We are not persuaded by Martin's argument that this case is controlled by the holding in the case of *Robinson v. Western Intl. Hotels Co.*, 170 Ga. App. 812 (318 SE2d 235) (1984). In *Robinson*, where the court found evidence of a design hazard in a fall from a high step which plaintiff had already once negotiated, the defendant did not challenge the fact that a hazardous condition existed; it defended on the basis that the plaintiff had equal

knowledge of the hazard. This is distinguishable from the present case. Bank South contends, and we find, that the evidence is uncontradicted that there is no hazardous design or condition regarding the guardrail or the curb. Only Martin's bare assertion that the situation is unsafe opposes the bank's evidence that the construction of the curb and rail were of ordinary materials and designed in the ordinary manner, and that Martin had knowledge of this. This simply is insufficient to show any breach of duty to Martin by the bank. It shows only that Martin unfortunately fell. In these circumstances, the trial court did not err in granting summary judgment to the bank.

*Judgment affirmed. Beasley, J., concurs. Deen, P. J., concurs and concurs specially.*

DEEN, Presiding Judge, concurring specially.

"Pablo Picasso is still painting at 90; Leopold Stokowski is still conducting at 90; and Pablo Casals is still playing the cello at 95. Cf. Cicero wrote his immortal De Senectute at the age of 86." *Emory Univ. v. Williams*, 127 Ga. App. 881, 886 (195 SE2d 464) (1973). The cited case, along with *Houser v. Walter Ballard &c. Co.*, 108 Ga. App. 559 (133 SE2d 924) (1963), recognizes the tendency of downward diminishing decline toward decadence (and finally deterioration, destruction, and death) of entropy affecting all life. While elderly and aged persons, along with all others, must be provided safe premises as invitees, the law seems to require no higher or greater duty of care owed to these persons as a group or classes of persons. The rule may not be the same if a business catered only or specially to exceptionally young groups or to the elderly.

Appellant argues on Motion for Rehearing that the plaintiff, a German immigrant, is a frail, older lady. This might well make a difference before a jury if the bank were not otherwise entitled to the grant of summary judgment. In again reviewing the record, I must vote to affirm. The writer fully concurs with the majority and also concurs specially.

DECIDED MAY 21, 1985 —
REHEARING DENIED JULY 11, 1985.

*Douglas L. Breault*, for appellant.
*Jerry A. Buchanan, Joseph L. Waldrep*, for appellee.